IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SCOTT UDY<br><br>    Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF TEXAS<br>MD ANDERSON CANCER CENTER<br><br>    Defendant. | CA No.:<br><br>JURY DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Scott Udy complains of Defendant The University of Texas MD Anderson Cancer Center and for cause of action would show the Court as follows:

## INTRODUCTION

1. Plaintiff demands a jury trial in this case as to any and all issues triable to a jury.

2. Plaintiff files this action against Defendant for violation of Section 504 of the Rehabilitation Act of 1973.

## PARTIES

3. Plaintiff Scott Udy ("Udy" or "Plaintiff") is a resident of Houston, Texas.

4. The University of Texas MD Anderson Cancer Center ("MD Anderson" or "Defendant") is a state university that can be served by serving its agent for service, Peter W.T. Pisters, M.D. 1020 Holcombe Street, Suite 1550, Houston, Texas 77030.

## VENUE

5. Venue is appropriate in the United States District Court for the Southern District of Texas, Houston Division because the events or omissions giving rise to the matter in controversy occurred in this district and because Defendant has substantial contacts within this district. Venue is proper in this Court under 28 U.S.C. § 1391.

## JUSRISDICION

6. The Court has subject matter jurisdiction over this case based on federal question jurisdiction, under 28 U.S.C. §1331 and 29 U.S.C.A. § 794.

7. The unlawful employment practices were committed within the jurisdiction of this Court.

## CONDITIONS PRECEDENT

8. No administrative exhaustion or other conditions precedents are required prior to the filing of claims under Section 504 of the Rehabilitation Act of 1973. 29 U.S.C.A. § 794.

## FACTS

9. Plaintiff worked for Defendant, UT MD Anderson Cancer Center for one year and three months.

10. When Plaintiff first noticed that he was having difficulty concentrating, Plaintiff discussed some of the challenges he was experiencing with the director, who was one step above his manager.

11. After sharing these difficulties with him he became very angry and told Plaintiff that, "if this is the case you can't be working here at MD Anderson, because you will never be successful."

12. Plaintiff told the director that he was seeking out mental health professionals. Plaintiff had an appointment the following day with the Employee Assistance Program (EAP). The director wanted Plaintiff to follow up the next day.

13. Plaintiff shared his experience with EAP and they counseled Plaintiff to never discuss these things with other employees.

14. Plaintiff was later diagnosed with Adult ADHD and was granted special accommodations.

15. The director transferred Plaintiff to a position that was previously held by a contract employee. Plaintiff was assigned to assist multiple project managers.

16. The project managers failed to train Plaintiff on the correct way to do things, which created many challenges because management failed to provide Plaintiff with the necessary accommodations.

17. Plaintiff was working on the job site without the needed accommodations and was having challenges. The end user made complaints to the director about Plaintiff's performance. The director went to HR for disciplinary actions.

18. HR stated that it was the director's fault for not providing Plaintiff with accommodations and therefore the director was disciplined.

19. The director immediately called Plaintiff into his office to discuss the matter. The director briefly explained to Plaintiff what happened and stated that Plaintiff was not in any trouble or at fault. The director stated that he was worried about Plaintiff. After the conversation, the director had Plaintiff sign a form documenting the conversation and an agreement that Plaintiff's accommodations were going to be provided.

20. Once Plaintiff's accommodations were finally provided, he began to be successful because he was able to learn and concentrate.

21. Plaintiff met again with the director because he was concerned about the hiring of new employees. These new employees were new project managers and they were taking away many of Plaintiff's tasks and opportunities. The director told Plaintiff to meet with his manager and discuss ways to come up with a plan.

22. Plaintiff met with his manager to see what the future looked like and discussed upcoming opportunities. The manager later assigned Plaintiff to a task to work onsite supporting a really good project manager that had the desire to teach and mentor Plaintiff.

23. Plaintiff did not have all of his accommodations at that work site, however Plaintiff did not need them because of the Project Manager's leadership. The Project Manager was bragging to Plaintiff's managers about how great Plaintiff was and expressed that Plaintiff brought a lot of value to the team.

24. One week after working on site again, Plaintiff's manager called to tell him to meet with the director in the morning. Plaintiff thought the manager was going to praise him and offer new opportunities for him.

25. When Plaintiff met with the director, he had Plaintiff go into a conference room and meet with the HR representative. Defendant terminated Plaintiff, stating that it was due to restructuring for the lack of work.

26. After the meeting, Plaintiff talked to his Manager immediately. The manager was extremely shocked and was unaware that Plaintiff was going to be terminated. The manager was very upset.

27. Plaintiff told his Manager his thoughts, referring back to Plaintiff's first conversation with the director about his disability. This brought a lot of concern to Plaintiff's manager. As

soon as Plaintiff shared this with his manager, the director came into the room. Plaintiff changed the conversation.

28. Plaintiff believes the director heard his comment through the door, because the director was acting nicer than usual.

29. The director explained that Plaintiff was not being terminated for his "abilities or inabilities, but for the lack of work and that the department was seeking out people with a higher skill set than Plaintiff had."

30. Defendant wanted all project managers to be able to work independently on their own projects. However, the new project managers are supporting other project managers by carrying the tasks that are within Plaintiff's skill set and job description. There was no lack of work.

31. Plaintiff was the only employee that was terminated. Plaintiff feels that the director had been fabricating this for a long time to have an excuse to terminate Plaintiff because the director saw Plaintiff as a threat to his career because of Plaintiff's disability, perceived disability, and/or report of a disability.

32. Defendant discriminated and retaliated against Plaintiff in violation the Rehabilitation Act of 1973 Section 504. 29 U.S.C.A. § 794.

## CAUSE OF ACTION

### I.
### *Violation of the Rehabilitation Act.*

33. Plaintiff hereby incorporates and realleges each and every paragraph of the facts.

34. MD Anderson is a part of The University of Texas System, an entity that receives federal financial assistance and is a covered entity for the purposes of § 504 of the Rehabilitation

5

Act. As such, MD Anderson is prohibited from discriminating against any "qualified individual with a disability."

35. At all times relevant to this lawsuit, Scott Udy is a qualified individual with a perceived disability. He was qualified to perform the essential functions required of assisting Project Managers in Houston, Texas.

36. MD Anderson treated Scott Udy less favorably in the terms and conditions of his employment than its similarly situated, yet non-disabled employees, because of his perceived disability.

37. Specifically, MD Anderson violated section 504 of the Rehabilitation Act, 29 U.S.C.A. § 794, by not accommodating Plaintiff's perceived disability and instead terminated Mr. Udy because of his perceived disability and/or his record of disability.

38. As a result of MD Anderson's discrimination and retaliation, Mr. Udy has suffered both economic and mental anguish damages.

39. Mr. Udy is further entitled to any and all relief permitted under the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*. including equitable relief.

## DAMAGES

40. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of wages, both in the past, present, and future, as well as compensatory damages, including but not limited to emotional distress and mental anguish.

## ATTORNEY'S FEES

41. Defendant's action and conduct as described herein and the resulting damage and loss to Plaintiff has necessitated Plaintiff retaining the services of ROSENBERG | SPROVACH, 3518 Travis Street, Suite 200, Houston, Texas 77002 in initiating this proceeding. Plaintiff

seeks recovery of reasonable and necessary attorney's fees. An award of reasonable and necessary attorney's fees to Plaintiff would be equitable and just pursuant to 29 U.S.C. § 794a.

## JURY DEMAND

42. Plaintiff hereby re-states his request for a jury trial.

## PRAYER

WHEREFORE, Plaintiff requests that Defendant be cited to appear and answer herein, and then on final hearing, Plaintiff have judgment as follows:

   a. Judgment against Defendant, for actual damages sustained by Plaintiff as alleged herein;

   b. Judgment against Defendant, for back pay lost by Plaintiff as alleged herein;

   c. Judgment against Defendant, for front pay by Plaintiff as alleged herein;

   d. Grant Plaintiff general damages for the damage to Plaintiff's reputation;

   e. Pre-judgment interest at the highest legal rate;

   f. Post-judgment interest at the highest legal rate until paid;

   g. Compensatory damages;

   h. Attorney's fees;

   i. All costs of court expended herein;

   j. Such other and further relief, at law or in equity, general or special to which Plaintiff may show Plaintiff justly entitled.

Respectfully submitted,

***/s/ Ellen Sprovach***
Ellen Sprovach
Attorney-in-Charge for Plaintiff
USDC SD/TX No. 22202
Texas State Bar ID 24000672
ellen@rosenberglaw.com
ROSENBERG | SPROVACH
3518 Travis Street, Suite 200
Houston, Texas 77002
(713) 960-8300
(713) 621-6670 (Facsimile)

OF COUNSEL:
ROSENBERG | SPROVACH                                          ATTORNEYS FOR PLAINTIFF